## LAXSON v. SCARBOROUGH.   (No. 6383.)

(Court of Civil Appeals of Texas. San Antonio. April 21, 1920. Rehearing Denied May 19, 1920.)

1. Sales ⊂⟹377—Allegation that cattle tendered were fully according to contract sufficient against general demurrer.

An express allegation, in an action for damages for breach of contract to purchase cattle, that cattle tendered were fully according to contract, is alone sufficient, when tested by a general demurrer, to show that plaintiff tendered cattle which in all respects complied with his contract obligations, and it is not lightly to be presumed that such an averment is contradicted and overruled by other allegations.

2. Sales ⊂⟹377—Allegation of "deterioration" of cattle did not overthrow allegation that cattle were according to contract.

Allegation by plaintiff, in an action for damages for breach of contract to purchase cattle, that cattle tendered were fully according to contract, was not overthrown by an allegation that on account of severe weather conditions the cattle had greatly deteriorated in value; the word "deteriorated" sometimes being used as a synonym for the word "decline," in view of district and county court rule 17 (142 S. W. xviii).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Deterioration.]

3. Sales ⊂⟹266—Contract of sale of cattle carries no implied warranty that cattle will remain fat until delivery.

It cannot be contended that every contract for the sale of cattle carries with it an implied warranty that the cattle will be just as fat at the time of delivery as they were at the time contract was made.

Error from District Court, Uvalde County; Joseph Jones, Judge.

Action by E. Scarborough against J. H. Laxson. Judgment for plaintiff, and defendant brings error. Affirmed.

W. B. Teagarden and Bruce W. Teagarden, both of San Antonio, for plaintiff in error.

G. B. Fenley, of Uvalde, for defendant in error.

MOURSUND, J. On December 24, 1917, J. H. Laxson and E. Scarborough entered into a contract whereby Laxson bound himself to sell his sheep, about 1,000 head, to Scarborough at $10.50 per head, and Scarborough agreed to pay in cattle, 100 head more or less, at $60 for cows and calves and $50 for dry cows. On or about January 3, 1918, at the request of Laxson, the contract was changed so as to relieve him from the delivery of the sheep, but binding him to accept the cattle and pay for same in money the prices stipulated in the original contract; delivery to be made on or about January 9, 1918. Scarborough gathered his cattle, consisting of 40 cows with calves and 62 dry cows, and had the same ready for delivery at the time and place agreed upon; but Laxson did not inspect same until January 11, 1918, and then refused to receive the same. Scarborough filed suit for damages for breach of the contract, alleging the above-stated facts, and, in addition, that at the time he tendered the cattle to Laxson "they were fully according to contract," and that "the plaintiff was then and there offering to fulfill his contract with defendant in every particular." The petition contained the following averments showing the damages claimed to have been sustained:

"The plaintiff further alleges that at the time the defendant refused to accept the said cattle, to wit, on the 9th day of January, 1918, that without any fault on the part of the plaintiff and on account of the severe weather conditions, the said cattle had greatly deteriorated in value, and on the said date they were not worth more on the market at the place of delivery in Uvalde county, Tex., than $50 per head for cows with calves and $40 per head for dry cows, or a difference of at least $10 per head.

"Plaintiff alleges that, by reason of the defendant's failure to comply with this contract and accept the said cattle, he was damaged in the sum of $10 per head, that is to say, a total of $1,020."

An answer consisting of a general demurrer and general denial was filed, but never presented to the court. Defendant failed to appear, but, after judgment was rendered against him for $1,020, brought the case to this court by writ of error.

[1-3] The only issue to be determined is whether the petition is sufficient to support the judgment. It is contended that no cause of action was stated for the reason that the petition showed that, "on account of the severe weather conditions, the said cattle had greatly deteriorated in value"; the theory being that this disclosed that the cattle had been physically injured between the date of the contract and the time for delivery, and therefore were not of the kind, class, and condition which plaintiff was to deliver, and

therefore defendant was under no obligation to accept them. When we speak of "kind, class, and condition" of the cattle, it is necessary to refer to the terms of the contract to see what was said about these things. The contract calls for cows and cows with calves, but contains no provision descriptive of condition nor any warranty of any kind. If the customs and usages of the cattle business cast any light upon the contract, the petition makes no mention thereof. It is expressly alleged that the cattle tendered were fully according to contract. This allegation, when considered alone, is of course sufficient, when tested by a general demurrer, to show that plaintiff tendered cattle which in all respects complied with his contract obligation. It is not lightly to be presumed that such an averment is contradicted and overthrown by other allegations. Therefore, if the allegation that, on account of the severe weather conditions, the cattle had greatly deteriorated in value, is susceptible of no other construction than that the value has been deteriorated by the effect of the weather upon the physical condition of the cattle, such allegation must not be given a meaning which would contradict the other allegation, if it can be given a meaning which will harmonize therewith.

Deterioration in value by reason of physical condition may result from disease, weakness, or loss of weight. No presumption can be indulged that the cattle were diseased or too weak to comply with the terms of the contract read in the light of any usage that might exist, as such a presumption would be in direct conflict with the unequivocal allegation that the cattle were fully according to contract. The natural inference therefore would be that the pleader, if referring to physical condition of the cattle, meant that there had been a shrinkage in weight which caused a deterioration in market value. Such a shrinkage, in the absence of any stipulation or warranty with reference to condition, would not establish the fact that the cattle were not fully according to contract. It cannot be contended that every contract for the sale of cattle to be delivered in the future carries with it an implied warranty that the cattle will be just as fat at the time of delivery as they were at the time the contract was made. The contract does not disclose the purpose for which the cattle were bought, whether for the purpose of marketing or for breeding purposes. If it could be conjectured that they were stock cattle as distinguished from cattle fit for slaughter, it still could not be inferred that the shrinkage could not have affected their market value to the extent claimed, for such shrinkage may have been sufficient to render it necessary to feed the cattle before the winter expired, and yet not sufficient to render them unsound at the time of delivery. The foregoing remarks demonstrate, we think, how purely speculative is the theory presented by appellants. In addition, it is also indulging in speculation to say that the allegation relied on has reference to the physical condition of the cattle. We are not prepared to say that severe winter weather conditions may not affect the value otherwise than by its effect upon the physical condition of the cattle, for we know not upon what brush or other forage the cattlemen of that section depended for feeding purposes, nor what effect unusually severe winter weather might have thereon, nor what the expense of feeding cattle amounted to, or its effect upon the value of cattle. The word "deteriorate" is sometimes used as a synonym for the word "decline," and there is nothing in the petition negativing a general decline in values in that section of the state.

The allegations were sufficient to support proof showing the depreciation in market value relied on of such a character that it would have been consistent with the claim that plaintiff tendered cattle fully in accordance with the requirements of the contract. This being true, the courts will certainly not indulge in presumption or conjecture in an attempt to destroy a petition upon which a judgment has been rendered without opposition, although ample opportunity was afforded to contest the issues. On the contrary, as directed by rule 17 (142 S. W. xviii) for the district and county courts, every reasonable intendment arising upon the allegations of the petition will be resolved in favor of its sufficiency.

We conclude that the judgment should be affirmed.